*633 TEXTO COMPLETO DE LA SENTENCIA
Las recurrentes, Compad, S.E. y F & S Construction, nos solicitan la revocación de la Resolución emitida el 31 de agosto de 2000 por el Departamento de Asuntos del Consumidor (DACO), mediante la cual dicha agencia ordenó a las recurrentes corregir, de forma solidaria, ciertas deficiencias relativas a vicios de construcción del complejo Pórticos de Guaynabo.
Por los fundamentos que expondremos, expedimos el auto solicitado y confirmamos la resolución recurrida.
I
Durante los años 1995 y 1996, la recurrente Compad, S.E. comenzó el desarrollo y construcción del proyecto denominado Pórticos de Guaynabo.
Dicho proyecto se compone de diecisiete (17) edificios con doscientos cuatro (204) unidades de vivienda. Para el mes de enero de 1997, se finalizó la primera fase del proyecto y se inició el proceso de entrega de los apartamentos correspondientes a los edificios 1, 2, 3 y 17. Para entonces, la desarrolladora Compad, S.E. fungía como administradora interina del complejo. Según consta en el expediente, Compad, S.E., como administradora interina del complejo, recibió quejas de varios titulares por defectos en la construcción de los edificios. Los defectos señalados estaban relacionados con la pintura de las rejas y edificios, con los extintores, pisos de los pasillos, estacionamientos, áreas comunes en general, servicio de mantenimiento y seguridad.
Con el propósito de que se atendieran las reclamaciones de los titulares, en el año 1998, se formó un comité de transición compuesto por varios titulares de apartamentos. Según se desprende de los autos, dicho comité solicitó a Compad, S.E. que le entregara los libros y documentos correspondientes a la administración del edificio; sin embargo, dichos documentos no fueron provistos. En atención a las deficiencias señaladas por los titulares, dicho comité realizó una serie de reuniones en las que Compad, S.E. indicó que atendería los reclamos oportunamente.
Posteriormente, el 25 de agosto de 1998, se escogió la Junta de Directores. Ésta realizó esfuerzos encaminados para obtener la administración del edificio. Sin embargo, a pesar de sus constantes requerimientos, la recurrente Compad, S.E. se negaba a entregar los documentos necesarios y requeridos por ley para formalizar la entrega. No fue hasta el 10 de julio de 1999 cuando la Junta de Directores del Condominio Pórticos de Guaynabo asumió el control de la administración del mismo. En esa misma fecha, ésta presentó nuevamente la reclamación sobre las imperfecciones relacionadas con el complejo. Compad, S.E. desatendió dicha reclamación alegando que la misma había caducado.
*634 Así las cosas, el 2 de septiembre de 1999, la Junta de Directores presentó querella ante el DACO. En la misma, alegó la existencia de las siguientes deficiencias: problemas de drenaje y filtración en los pórticos y azoteas, grietas y filtraciones en paredes exteriores del edificio, hongo causado por drenaje pobre, ausencia de estacionamiento de carga según descrito en la escritura matriz e incumplimiento con las especificaciones en cuanto a la medida de éstos, asfalto defectuoso, problemas eléctricos en las áreas comunes y filtraciones en los bloques ornamentales de cristal en los pasillos de los edificios, entre otros. El 19 de octubre de 1999, un técnico del DACO realizó una inspección ocular a los fines de examinar la condición de la pintura exterior del complejo de viviendas y otras alegaciones contenidas en la querella y suscribió un informe de inspección. Dicho informe constató las pésimas condiciones en que se encontraban las áreas comunes del edificio. Ninguna de las partes objetó el informe, a pesar de que fueron notificados con copia del mismo y de que se les concedió un término para ello.
El DACO celebró vista los días 28 de febrero, 10 de marzo, 14 de abril y 20 de junio de 2000. Conforme al testimonio prestado por la Sra. Aracelis Cardona, Administradora del Condominio, y el informe suscrito por el técnico del DACO, los cuales merecieron entera credibilidad a dicha agencia, el 31 de agosto de 2000, el DACO emitió la resolución recurrida en la que ordenó a las recurrentes Compad, S.E. y F & S Construction corregir, de manera solidaria, todos los defectos señalados por la agencia en la misma.
No conformes con la determinación de la agencia, el 25 de septiembre de 2000, las recurrentes presentaron moción de reconsideración alegando que el DACO no tenía jurisdicción para atender la querella, puesto que la Junta de Directores no es un consumidor y que conforme al término de dos (2) años para reclamar vicios de construcción dispuesto en la Ley Núm. 130 del 13 de junio de 1967, según enmendada, 17 L.P.R.A. see. 511, la acción había caducado. La Junta de Directores se opuso a la solicitud de reconsideración. El 2 de octubre de 2000, el DACO emitió resolución acogiendo la moción de reconsideración presentada. Expirado el término de noventa (90) días para que DACO emitiera una determinación en cuanto a la misma sin que tomara acción alguna, el 25 de enero de 2001, Compad, S.E. y F & S Construction presentaron ante nos su recurso de revisión administrativa, en el que alegan la comisión de los siguientes errores:

“Erró el Honorable Departamento de Asuntos del Consumidor al asumir jurisdicción sobre la presente reclamación.

Erró el Honorable Departamentos de Asuntos del Consumidor al no considerar variaciones a las determinaciones de hechos formuladas en la resolución y/o formular determinaciones adicionales conforme a lo solicitado, a la luz de evidencia documental y testifical ante su consideración.

Erró el Honorable Departamento de Asuntos del Consumidor al no concluir que la acción había caducado.

Erró El Honorable Departamento de Asuntos del Consumidor al concluir que la parte querellada venía obligada a reparar los techos de todos los edificios y pintar todos, así como corregir todos los defectos reclamados, contrario a lo establecido por la prueba ante su consideración y lo dispuesto en la legislación y reglamentación vigente, según estipulada por nuestro más alto tribunal. ”

La parte recurrida presentó el correspondiente escrito en oposición. Con el beneficio de la comparecencia de ambas partes, resolvemos.
II
Es pertinente atender, en primer lugar, lo alegado por las recurrentes Compad, S.E. y F & S Construction en cuanto a la jurisdicción de la agencia para atender la reclamación. Éstas señalan que el DACO debió declararse sin jurisdicción para atender la querella presentada por la Asociación de Residentes Pórticos de Guaynabo bajo el fundamento de que dicha agencia solamente puede atender querellas presentadas por personas naturales y la *635 querellante es una persona jurídica.
Nuestro Tribunal Supremo ha reiterado en innumerables ocasiones que la delegación de poderes adjudicativos a las agencias administrativas responde al hecho de que éstas poseen vasta experiencia y conocimiento especializado, siendo éstos instrumentos necesarios para la interpretación de la ley. Asoc. Vec. H. San Jorge v. U. M. Corp., 150 D.P.R._(2000), 2000 J.T.S. 21, página 561; T-JAC, Inc. v. Caguas Centrum Limited, 148 D.P.R._(1999), 99 J.T.S. 60; Reyes Salcedo v. Policía de P.R., 143 D.P.R. 85, 94-95 (1997). La creación de diversas agencias administrativas y la delegación a éstas de poderes cuasijudiciales tuvo el propósito de proveer un sistema adjudicativo económico, rápido y práctico. Almonte v. Brito y/o Estancias Reales, S.E., 156 D.P.R._(2002), 2002 J.T.S. 43, página 892; López y otros v. Asoc. de Taxis de Cayey, 142 D.P.R. 109, 113 (1996); Srio. de D.A.C.O. v. Junta del Condominio C. Martí, 121 D.P.R. 807, 821 (1988). Por consiguiente, se favorece la utilización del proceso adjudicativo administrativo debido al hecho de que los asuntos se resuelven con mayor rapidez. Los remedios tardíos y los procedimientos complicados derrotarían todo el propósito de las leyes y de las oficinas creadas para la defensa del consumidor. Pérez Ríos v. Hull Dobbs, 107 D.P.R. 834, 840-841 (1978).
El DACO fue creado con el propósito de vindicar, proteger e implementar los derechos del consumidor. Ley Orgánica del Departamento de Asuntos del Consumidor, Ley Núm. 5 de 23 de abril de 1973, 3 L.P.R.A. §341b. El artículo 6, inciso (c) de dicha ley, 3 L.P.R.A. sec. 341e (c), dispone que entre los poderes y facultades del Secretario de DACO está "[a]tender, investigar y resolver las quejas y querellas presentadas por los consumidores ..., [pjoner en vigor, implementary vindicar los derechos de los consumidores, tal como están contenidos en todas las leyes vigentes, a través de una estructura de adjudicación administrativa ...”. En su artículo 9 la referida ley, supra, 3 L.P.R.A. sec. 341 (h), expresa que el Secretario establecerá una división para atender querellas en protección del consumidor radicadas por consumidores y grupos de consumidores. Sin embargo, dicha ley no define lo que es un consumidor, ni lo que es un querellante. A los efectos de suplir dicha omisión DACO adoptó mediante la Regla 6 (d) del Reglamento de Procedimientos Adjudicativos, supra, 10 R. P.R. sec. 250.4 (D), la siguiente definición para el término consumidor: "toda persona natural que adquiere o utiliza productos o servicios como destinatario final"; y mediante la Regla 6 (k), 10 R.P.R. sec. 250.4 (k), la siguiente definición para el término querellante: "aquel individuo que reclama un derecho en su capacidad personal o el Departamento".
A los fines de decidir el alcance jurisdiccional de DACO en la solución de las controversias internas y externas que emanan de la dinámica particular que se desarrolla dentro del ámbito del régimen de propiedad horizontal, es menester, además, entender el propósito de dicho régimen.
La Ley Núm. 104 de 25 de junio de 1958, según enmendada, conocida como la Ley de Propiedad Horizontal, 31 L.P.R.A. see. 1291 et seq., tuvo como uno de sus propósitos el reglamentar el régimen de propiedad horizontal para promover este tipo de constmcción, que permite un mejor aprovechamiento del terreno en áreas densamente pobladas en donde el alto costo del terreno provoca que el costo de las viviendas sea más elevado y así facilitar a muchas familias convertir en realidad su sueño de tener hogar propio. Asoc. de Condómines v. Naveira, 106 D.P.R. 88, 91 (1977); Asoc. de Condómines v. Seguros Arena, 106 D.P.R. 133, 135 (1977). Aunque dicha ley remedió muchos males, no logró ofrecer todas las soluciones necesarias a sus propósitos de largo alcance. Por eso, en Castle Enterprises, Inc. v. Registrador, 87 D.P.R. 775, 781, 788-789 (1963), el Tribunal Supremo, con visión de futuro, dijo: "... al interpretar y administrar la Ley de Propiedad Horizontal, se interpreta y se administra una legislación nueva destinada a hacer posible la realización defines sociales y económicos, necesarios en nuestros días. Por eso su interpretación y administración debe ser constructiva e imaginaria." Cónsono con esa visión, en Arce v. Caribbean Home Const. Corp., 108 D.P.R. 225, 252 (1978), el Tribunal Supremo reconoció al Consejo de Titulares como un sujeto de derecho que actúa con personalidad propia en el ámbito de sus finalidades y que tiene existencia jurídica independiente a la de los miembros que lo componen cuando actúa en función del fin común perseguido.
*636 Por su parte, el Artículo 38 de la Ley Núm. 104, supra, 31 L.P.R.A. sec 1293b, establece como órgano directivo y deliberativo de todo condominio, el Consejo de Titulares del mismo. La ley le otorga al Consejo de Titulares la prerrogativa de decidir sobre todos los asuntos de interés para la comunidad y adoptar aquellas medidas necesarias para el mejor servicio común. Esta disposición enmarca el contorno de las causas de acción que invoque el Consejo de Titulares. Las acciones deben estar dirigidas a situaciones que conciernan a la comunidad y a la ejecución de obras extraordinarias y mejorar al inmueble. En fin, le corresponde al Consejo de Titulares adoptar las medidas necesarias para que el desempeño del condominio sea más efectivo.
En el caso de autos, las recurrentes Compad, S.E. y F & S Construction señalan que el DACO debió declararse sin jurisdicción para atender la querella presentada por la Asociación de Residentes Pórticos de Guaynabo bajo el fundamento de que dicha agencia solamente puede atender querellas presentadas por personas naturales y la querellante es una persona jurídica. Sin embargo, al analizar la ley orgánica de la agencia, supra, podemos concluir que uno de los propósitos fundamentales de ésta es vindicar los derechos de los consumidores, ya sean éstos individuos o agrupaciones. Estamos convencidos que la definición adoptada por DACO para los términos ''consumidor'' y "querellante" no puede derrotar el alcance y objetivos de su ley orgánica, supra, ni de la Ley de Propiedad Horizontal, supra, ni de la jurisprudencia citada en esta resolución. No se cometió el error señalado.
III
Resuelto lo anterior, debemos determinar si, conforme a las disposiciones de la Ley Núm. 130 del 13 de junio de 1967, 17 L.P.R.A. see. 509 et seq., la acción para exigir responsabilidad por los defectos de construcción por la Asociación de Residentes Pórticos de Guaynabo en su querella había caducado.
El propósito de la Ley Núm. 130 del 13 de junio de 1967, conocida como la Ley de la Oficina del Oficial de Construcción, supra, es reglamentar las actividades de urbanizadores y constructores que se dediquen al negocio de la construcción de viviendas, en todas las etapas inclusive la de venta de las viviendas. United Fed. Savings v. DACO, 111 D.P.R. 424, 426 (1981). El Artículo 9 de la referida ley, supra, sec. 509, dispone que incurrirá en una práctica indeseable en el negocio de la construcción de vivienda todo urbanizador o constructor que deje de corregir un defecto de construcción en una vivienda. Conforme al artículo 11, supra, sec. 511, el DACO tendrá jurisdicción para atender las querellas y la acción para exigir responsabilidad por vicios o defectos de construcción caducará a los dos (2) años del otorgamiento de la escritura de compraventa.
A tenor con lo anterior, el Reglamento para Regular las Distintas Actividades que se llevan a cabo en el Negocio de la Construcción de Viviendas Privadas en Puerto Rico, Reg. Núm. 2268 del 16 de septiembre de 1977 (Reglamento de Constmcción), establece unas reglas a seguir respecto a prácticas indeseables en el negocio de la constmcción y los términos para reclamar en caso de vicios o defectos de constmcción. En lo pertinente, dicho reglamento dispone en su sección 10 que incurrirá en práctica indeseable en el negocio de la constmcción de vivienda todo urbanizador o constmctor que, entre otras cosas, deje de corregir cualesquiera de los defectos que el Reglamento de Constmcción enumera o cualquier otra anormalidad que no se encuentre enumerada. Los defectos de constmcción para los cuales no se especifique un término dentro del cual deberá notificarse al urbanizador o constmctor se le aplicará un término de notificación de dos (2) años. En cuanto a reclamaciones por pintura defectuosa o mano de obra deficiente y grietas en las paredes del edificio, el inciso 7 de la misma sección dispone que habrá de notificar al urbanizador o constmctor dentro de los (6) meses de la fecha de la firma de la escritura original de compraventa. El inciso 12 de la misma sección dispone para el caso de reclamaciones por filtraciones en los techos. La referida sección 10 dispone el término de notificación para los efectos de constmcción allí mencionados, muchos de los cuales son objeto de la querella que dio lugar a la controversia en autos. 
Ahora bien, debemos resolver en qué momento es que comienzan a decursar los términos a los que hace referencia el Reglamento cuando se trata de una propiedad sometida al régimen de propiedad horizontal y la *637 reclamación es por los siguientes defectos relacionados en la querella presentada: problemas de drenaje y filtración en los pórticos y azoteas, grietas y filtraciones en paredes exteriores del edificio, hongo causado por el drenaje pobre, falta de estacionamiento de carga según descrita en la escritura matriz e incumplimiento con las especificaciones en cuanto a la medida de éstos, asfalto defectuoso, problemas eléctricos en las áreas comunes y filtraciones en los bloques ornamentales de cristal en los pasillos de los edificios, entre otros.
Las recurrentes Compad, S.E. y F & S Construction sostienen que el término comienza a decursar desde la fecha en que la Administración de Reglamentos y Permisos (ARPE) concedió el permiso de uso. De otra parte, la Asociación de Residentes Pórticos de Guaynabo aduce que cuando la reclamación se refiere a defectos en los elementos comunes del inmueble, el punto de partida para computar el término dentro del cual deberá notificarse al desarrollador es la fecha en que la Junta de Directores adquiere el control de la administración del condominio. Coincidimos con la posición déla Asociación de Residentes.
Los permisos de uso para la primera fase del proyecto (edificios 1, 2, 3 y 17) se obtuvieron para el mes de enero de 1997. Fue entre los meses de enero y febrero de 1997 cuando las recurrentes iniciaron el proceso de entrega de los apartamentos. Si utilizamos la fecha de la expedición del permiso de uso, como punto de partida para el cómputo, estaríamos acortando el período que tiene todo titular en condominio para hacer sus reclamaciones, ya que la fecha de la expedición del permiso de uso, requisito para proceder a la individualización del apartamento en condominio, es necesariamente anterior a la fecha de firma de la escritura de compraventa. Ello equivaldría a comenzar el cómputo de prescripción de la acción antes de que el titular adquiriera el apartamento.
La Ley Núm. 104, supra, exige a quien somete la propiedad al régimen de propiedad horizontal que administre interinamente y cuide por el mejor funcionamiento y conservación del mismo, especialmente cuando se trata de elementos comunes. Como mencionáramos anteriormente, la razón es la clara política pública que existe de fomentar la estabilidad del régimen de propiedad horizontal y proteger a los adquirentes de las unidades sometidas al mismo. De igual forma, el Reglamento de Condominios del DACO, supra, dispone que un condominio sometido al régimen de propiedad horizontal estará sujeto a la administración interina y que el administrador interino será responsable del buen gobierno, funcionamiento y reparación de los elementos comunes.
La recurrente Compad, S.E., como administrador interino, tenía la responsabilidad de ser diligente en la conservación y preservación de la propiedad, cuando aún no se había constituido la Junta de Directores. Sin embargo, a pesar de que los condominos le reclamaron oportunamente por deficiencias específicas en áreas comunes en general y ésta afirmó que llevaría a cabo las reparaciones pertinentes, nada hizo al respecto.
La función de la recurrente Compad, S.E. como administrador cesó el 10 de julio de 1999, fecha en que la Junta de Directores del Condominio Pórticos de Guaynabo asumió el control de la administración del mismo.
La Junta de Directores es el órgano ejecutivo a quien corresponde representar en juicio y fuera de él al Consejo de Titulares. Además, tiene la facultad de atender todo lo relacionado con el buen gobierno, administración, vigilancia y buen funcionamiento, particularmente de los elementos comunes. Ley Núm. 104, supra, sec. 1293b-4, inciso (a).
Por tanto, no podemos considerar una fecha anterior a cuando la Junta de Directores asumió el control de la administración como punto de partida para comenzar a computar los términos de caducidad que dispone el Reglamento de Construcción para reclamar por los defectos alegados. Lógicamente, el desarrollador-administrador no va a reclamar a sí mismo por vicios y defectos que atañan a los condóminos. Es pues, desde el momento en que la Junta de Directores adquiere el control de la administración del Condominio Pórticos de Guaynabo, el 10 de julio de 1999, que efectivamente estaba autorizada por ley a ejercer derechos y a instar *638 reclamaciones en representación del Consejo de Titulares. La Junta de Directores presentó su reclamo ante el DACO el 2 de septiembre de 1999; esto es, dos (2) meses después de la fecha en que tomó el control sobre la administración del condominio. Por tanto, conforme a los términos de notificación establecidos por el Reglamento para cada uno de los defectos señalados, la Junta de Directores presentó su reclamación oportunamente. 
Es evidente que el punto de partida para computar los términos de caducidad dispuestos en el Reglamento de Construcción para reclamaciones por defectos de construcción tiene que ser la fecha en que la Junta de Directores toma el control sobre la administración. Es en ese momento, cuando el desarrollador de un condominio cesa en funciones de administrador interino, que la Junta de Directores puede comenzar a ejercer, en representación del Consejo de Titulares, los derechos y reclamaciones en cuanto a vicios y defectos de construcción. Por consiguiente, coincidimos con el foro administrativo en que la fecha en que la Junta de Directores toma el control de la administración de un condominio puede considerarse análoga al momento de la firma de la escritura de compraventa cuando de unidades independientes se trata y, conforme a dicha fecha y a los términos establecidos por Reglamento, en el caso de autos la reclamación fue presentada dentro del término establecido. No se cometió el error señalado.
IV
Resta por considerar los errores relativos a la credibilidad que le mereció al foro administrativo la evidencia presentada. Las recurrentes Compad, S.E. y F & S Construction señalan en segundo y cuarto lugar que el DACO erró "al no considerar variaciones a las determinaciones de hechos formuladas en la resolución y/o formular determinaciones de hechos adicionales conforme a lo solicitado, a la luz de la evidencia documental y testifical ante su consideración" y "al concluir que la parte querellada venía obligada a reparar los techos de todos los edificios, así como corregir todos los defectos reclamados, contrario a lo establecido por la prueba ante su consideración y lo dispuesto en la legislación y reglamentación vigente, según estipulada por nuestro más alto tribunal".
Es norma de derecho claramente establecida que en el proceso de revisión de una decisión emitida por una agencia administrativa, los tribunales de apelación han de concederle gran peso y deferencia a la decisión administrativa en vista de la experiencia y conocimiento especializado de la agencia. Asociación Vecinos del Hospital San Jorge v. United Medical Corporation, et als., 150 D.P.R._(2000), 2000 J.T.S. 21, página 560; Agosto Serrano v. F.S.E., 132 D.P.R. 866, 879 (1993). Debemos también tener presente que los procedimientos y decisiones de un organismo administrativo tienen a su favor una presunción de corrección y regularidad, la cual debe ser respetada mientras la parte que la impugne no produzca suficiente evidencia para derrotarla. Pérez Vélez v. VPH Motors Corp., 152 D.P.R._(2000), 2000 J.T.S. 177, páginas 378-9; Henríquez v. Consejo de Educación Superior, 120 D.P.R. 194, 210 (1987); M. & B.S., Inc. v. Departamento de Agricultura, 118 D.P.R. 319, 331 (1987). Por eso, los tribunales debemos ser cautelosos al intervenir con las determinaciones de organismos administrativos. Viajes Gallardo v. Clavell, 131 D.P.R. 275, 289-290 (1992). Además, debemos otorgarle deferencia a las mismas si están sostenidas por evidencia sustancial que conste en el expediente administrativo. Rivera Concepción v. A.R.P.E., 152 D.P.R._(2000), 2000 J.T.S. 155, página 160; Pérez Vélez v. VPH Motors Corp., supra, página 379; Mun. De San Juan v. J.C.A., 152 D.P.R._(2000), 2000 J.T. S. 193, página 474; P.R.T.C. v. Unión Independiente de Empleados Telefónicos, 131 D.P.R. 171, 211 (1992). Se entiende por evidencia sustancial aquélla "que una mente razonable podría aceptar como adecuada para sostener una conclusión". Asociación Vecinos del Hospital San Jorge v. United Medical Corporation, et ais., supra, página 561; Hilton Hotel International v. Junta de Salario Mínimo, 74 D.P.R. 670, 687 (1953).
En atención a los criterios y principios antes esbozados, la sección 4.5 de la Ley de Procedimiento Administrativo Uniforme, según enmendada, Ley Núm. 170 de 12 de agosto de 1988, 3 L.P.R.A. see. 2175, al referirse al alcance de la función revisora, dispone en lo pertinente que las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el *639 expediente administrativo. En lo que respecta a las conclusiones de derecho, éstas son revisables en todos sus aspectos por el tribunal. Asociación Vecinos del Hospital San Jorge v. United Medical Corporation, et als., supra, página 561; P.R.T.C. v. R. Reg. Tel. de P.R., 151 D.P.R._(2000), 2000 J.T.S. 98, página 1266. Y, aun en este último caso, se ha señalado que las interpretaciones que hacen los organismos administrativos del alcance de sus facultades merecen gran deferencia judicial si son razonables y consistentes con su propósito legislativo. P.R.T.C. v. R. Reg. Tel. de P.R., supra, página 1266; Colón v. Méndez, Depto. de Recursos Naturales, 130 D.P.R. 433, 453 (1992). Los tribunales, pues, no están autorizados a intervenir con las determinaciones de la agencia en ausencia de una demostración de que son caprichosas, irrazonables o arbitrarias. Costa, Piovanetti v. Caguas Expressway, 149 D.P.R. _(2000), 2000 J.T.S. 11, página 489; Debién v. Junta de Contabilidad, 76 D.P.R. 96, 105 (1954); Murphy Bernabé v. Tribunal Superior, 103 D.P.R. 692, 699 (1975).
Con estos principios legales en mente, pasemos al examen de los errores en cuestión.
Como argumento para el señalamiento de error relativo a que las determinaciones de hechos formuladas en la resolución recurrida no están sustentadas por la evidencia documental y testifical que obra en el expediente administrativo, las recurrentes Compad, S.E. y F & S Construction sostienen que durante la vista administrativa se desfiló prueba contraria a dichas determinaciones. No tienen razón.
Las recurrentes impugnan las determinaciones del foro administrativo solamente en cuanto a la forma en que éstas manejaron las quejas presentadas por los condominos. Esto es, si bien es cierto que existían quejas de condominos por las deficiencias alegadas en la querella, en ningún momento las recurrentes señalan que dichas deficiencias no existieran. Por el contrario, la alegación de las recurrentes es a los efectos de que intentaron corregir las mismas, muchas veces infructuosamente. Ello evidencia la presencia de las referidas deficiencias a pesar de los esfuerzos realizados por repararlas. Mediante la presentación de la querella, la Asociación de Residentes del Condominio Pórticos de Guaynabo buscaba la corrección de las deficiencias alegadas. Los esfuerzos de las recurrentes por repararlas claramente no fueron suficientes. Conforme la prueba presentada, la cual le mereció entera credibilidad al foro administrativo, los defectos de construcción alegados en la querella estaban presentes al momento de la inspección ocular. El informe de dicha inspección no fue objetado, por lo que debemos asumir que no existe controversia en relación con las alegadas deficiencias. Ante tales circunstancias, el foro administrativo actuó correctamente al establecer en sus determinaciones la existencia de los defectos.
Hemos examinado los documentos que obran en autos y concluimos que la determinación de la agencia está sostenida por la evidencia sustancial que obra en el expediente administrativo. Los defectos alegados por la Junta de Directores fueron constatados por la inspección ocular realizada por el DACO. Las recurrentes no han ofrecido evidencia o alegación alguna que nos lleve a concluir que la determinación del DACO fuera irrazonable o que no estuviera fundamentada en la totalidad del récord. Considerando toda la evidencia documental que consta en el expediente, así como el informe de inspección ocular suscrito el 19 de octubre de 1999 por un técnico designado por el DACO, y a falta de cualquier evidencia favorable a las recurrentes, no vemos razón para sustituir nuestro criterio por el de la agencia administrativa.
A tenor con lo anterior, tampoco erró el DACO al ordenar las reparaciones indicadas en su resolución.
Y
Por los fundamentos antes expuestos, expedimos el auto solicitado y confirmamos la resolución recurrida.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Heana Oquendo Graulau Secretaria General
*640 ESCOLIOS 2003 DTA 7
1. Notificada el 5 de septiembre de 2000.
2. Notificada el 3 de octubre de 2002.
3. No pretendemos ni haremos un desglose exhaustivo de los términos de notificación aplicables para cada uno de los defectos señalados por ser innecesario a los fines de la causa ante nuestra consideración.
4. De los defectos alegados, el que tiene impuesto el término más corto para hacer una reclamación es el relativo a problemas eléctricos, donde la sección 10 del Reglamento establece un término de notificación de treinta (30) días a partir de la firma de la escritura de compraventa para los incisos (a), (b), (c), (d) y (e). Sin embargo, toda vez que no se especificó en que consistían tales problemas, los mismos pueden ubicarse en la cláusula residual (f) que, por no tener término establecido, le es de aplicación el de dos (2) años. Además, es menester señalar que el DACO no ordenó ninguna corrección en este sentido.